IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JARRON DARVEZ JACKSON, | ) | |
| Plaintiff, | ) | C.A. No. 15-153 Erie |
| | ) | |
| vs. | ) | District Judge Susan Paradise Baxter |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Plaintiff Jarron Darvez Jackson, a prisoner presently incarcerated at the Federal Correctional Institution at Edgefield, South Carolina ("FCI-Edgefield"), initiated this action on June 17, 2015, by filing a *pro* se civil rights complaint setting forth numerous legal claims spanning a period of eight years, and sounding in false arrest/false imprisonment, malicious prosecution, deliberate indifference, due process, equal protection, failure-to-protect, breach of contract, etc. Plaintiff subsequently filed an amended complaint on October 27, 2015, and a "final" amended complaint [ECF No. 79] on May 12, 2017, which is the operative pleading in this case. All of Plaintiff's claims arise from his detention at the Allegheny County Jail in Pittsburgh, Pennsylvania ("ACJ"), from May 30, 2014, to May 14, 2015.

Named as Defendants in the operative complaint are: United States of America ("United States"); the Department of Justice/U.S. Marshal Service ("USMS"); Allegheny County ("Allegheny"); Rich Fitzgerald, Allegheny County Executive ("Fitzgerald"); Orlando Harper, Warden at ACJ ("Harper"); Simon Wainwright, Major/Deputy Warden at ACJ ("Wainwright"); ACJ Correctional Officers Eugene Judge ("Judge") and John Doe Garcia Chavez ("Garcia-Chavez"); Corizon Health, Inc., the contracted medical provider at ACJ ("Corizon"); Corizon

1

employees David Druskin, PA-C ("Druskin"), Danielle Litzinger, NP ("Litzinger"), and John Doe Katcher, Ph.D. ("Katcher");[1] and UPMC Mercy ("UPMC").

This case was initially assigned to United States District Judge Barbara Rothstein, as presiding judge, and was referred to the undersigned, who was then a United States Magistrate Judge, for all pretrial proceedings. On March 21, 2018, District Judge Rothstein issued an Order [ECF No. 135] adopting the undersigned's Report and Recommendation [ECF No. 131], granting in part and denying in part motions to dismiss filed on behalf of the Defendants [ECF Nos. 80, 82, 84, 89], and dismissing several of Plaintiff's claims, including all claims against Defendant UPMC, which was dismissed from this case. The only claims remaining in this case are (1) a claim against Defendants United States and USMS ("U.S. Defendants") under the Federal Tort Claims Act ("FTCA"), alleging that said Defendants failed to ensure that Plaintiff's medical needs were met at ACJ; (2) A Fourteenth Amendment deliberate indifference claim against Defendants Allegheny, Fitzgerald, Harper, and Wainwright ("Allegheny Defendants"), alleging that said Defendants failed to ensure that Corizon provided his prescribed medication; (3) and a Fourteenth Amendment deliberate indifference claim against Defendants Corizon, Druskin, Litzinger, and Katcher, alleging that Corizon's process and policy of re-prescribing medications delayed access to his medication for up to one week and resulted in the lack of "effective treatment."

On September 14, 2018, the undersigned was sworn in as a United States District Judge, and this action was subsequently reassigned to the undersigned, as presiding judge, on September 17, 2018 [ECF No. 173]. Now pending before this Court are motions for summary judgment that have been filed on behalf of the U.S. Defendants [ECF No. 161], the Allegheny

---

[1] According to the docket, Defendants Druskin, Litzinger, and Katcher have never been personally served in this matter, nor has an attorney entered an appearance on their behalf.

Defendants [ECF No. 165], and Defendant Corizon [ECF No. 168]. Despite having been granted ample time to do so, Plaintiff has failed to file a response to any of Defendants' pending motions. This matter is now ripe for consideration.

## II. Discussion

### A. FTCA Claim v. U.S. Defendants

Plaintiff alleges that the U.S. Defendants "intentionally interfered" with Plaintiff's medical treatment by failing to ensure that Plaintiff's medical needs were met after he was transferred to ACJ. (ECF No. 79, at pp. 2-3). The U.S. Defendants assert that this Court lacks subject matter jurisdiction to hear Plaintiff's FTCA claim.

In general, the FTCA grants jurisdiction to the federal courts to hear suits against the United States government for torts committed by its employees while in the scope of their employment. 28 U.S.C. § 2675(a). Thus, the FTCA constitutes a limited waiver of the sovereign immunity otherwise bestowed upon the United States. White-Squire v. U.S. Postal Service, 592 F.3d 453, 456 (3d Cir. 2010), citing Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003). While the FTCA generally grants jurisdiction to the tort plaintiff, however, there are several notable exceptions to the Act that put certain actions beyond the jurisdiction of the federal courts. 28 U.S.C. § 2680. Two such exceptions that the U.S. Defendants raise here are the independent contractor exception and the discretionary function exception. Complaints that fall within either of these exceptions must be dismissed for a lack of subject matter jurisdiction.

Here, the record establishes that federal detainees are housed at ACJ pursuant to an Intergovernmental Agreement ("IGA") between the USMS and ACJ [ECF No. 162-2]. The terms of the IGA require ACJ to "accept and provide for the secure custody, safekeeping, housing, subsistence and care of Federal detainees… in a manner consistent with Federal law and the

Core Detention Standards and/or any other standards required by an authorized agency whose detainees are housed" at ACJ. (ECF 162-2, at p. 4). The IGA further provides that ACJ would allow "periodic inspections by Federal Government Inspectors, … in accordance with the Core Detention Standards required by any or all of the Federal authorized agency users whose detainees may be housed pursuant to [the IGA]." (Id. at p. 13).

In Logue v. U.S., 412 U.S. 521 (1973), the Supreme Court considered the applicability of the FTCA's independent contractor exception in the context of a substantially similar IGA between the USMS and a local jail. Initially, the Court noted that the test for determining if an employee or independent contractor relationship exists under the FTCA is whether the federal government had the authority to "control the detailed physical performance of the contractor." Id. at 527-28 (citations omitted). The Court then observed that, under 18 U.S.C. § 4002, "Congress … clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." Id. at 529. After noting that the IGA at issue gave the United States "no authority to physically supervise the conduct of the jail's employees," the Court concluded that the USMS could not be held liable for the alleged negligence of the local jail's employees because the jail was an independent contractor under the FTCA. Id. at 530. Accord Williams v. United States, 50 F.3d 299, 306 (4th Cir. 1995) ("the United States will not be held liable under the independent contractor exception of the FTCA by virtue of entering contracts and demanding compliance with federal standards, unless the United States supervises the 'day-to-day operations' of the endeavor"); Bailey v. U.S. Marshals Service Headquarters, 426 Fed.Appx. 44, 46-47 (3d Cir. 2011) (same).

Based on the foregoing authority, it is clear that the independent contractor exception to the FTCA precludes Plaintiff's claim against the U.S. Defendants, and summary judgment will be entered in favor of the U.S. Defendants, accordingly.[2]

### B. Allegheny Defendants

Plaintiff alleges that the Allegheny Defendants failed to intervene with Defendant Corizon to ensure that his medication was provided as previously prescribed. In particular, Plaintiff claims that his prescribed medications were transferred with him to ACJ but were not given to him. The Allegheny Defendants assert, *inter alia*, that Plaintiff cannot support a claim of deliberate indifference to a serious medical need against Defendants Fitzgerald, Harper, and Wainwright, and has failed to establish a municipal liability claim against Defendant Allegheny. The Court agrees on both counts.

#### 1. Defendants Fitzgerald, Harper, and Wainwright

Defendant Fitzgerald is the Executive of Allegheny County, Defendant Harper is the Warden of ACJ, and Defendant Wainwright is Major/Deputy Warden at ACJ. Thus, all are non-medical personnel.

It is well-settled that non-medical prison officials are usually justified in believing a prisoner is receiving appropriate treatment if the prisoner is under the care of medical personnel. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical [prison official] … will not be chargeable with the Eighth Amendment scienter

---

[2] Because the independent contractor exception has been found to apply in this case, there is no need to discuss the application of the discretionary function exception alternatively raised by the U.S. Defendants; nonetheless, the Court notes that such exception would also bar Plaintiff's claim in this case. See, e.g., Williams, 50 F.3d at 310 ("The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the [discretionary function] exception is designed to shield from liability….).

5

requirement of deliberate indifference." Id. Further, when medical care is provided, "[it is presumed] that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) (citation omitted).

Here, the record reveals that Plaintiff was transferred to ACJ on May 30, 2014. Included in the record is a sampling of Plaintiff's medical records for the period from May 30, 2014, through July 2014. These records show that Plaintiff received a medical screening upon his arrival al ACJ, at which time five prescription medications were ordered: Amitriptyline, Ventolin, Alvesco, Sertraline, and Trazodone. (ECF No. 171-1, at p. 1). On June 13, 2014, ACJ's medical personnel reviewed Plaintiff's prescription medications, and the next day Zoloft and Trazodone were ordered. (ECF No. 171-2, at p. 1). On June 17, 2014, Naproxen was ordered for Plaintiff, and on June 25, 2014, Plaintiff's prescription for Sertraline was continued and Trazodone was increased. (ECF No. 171-1, at p. 1). On July 8, 2014, Amitriptyline and Naproxen were reordered for Plaintiff (ECF NO. 171-1, at p. 1), and on July 27, 2014, Trazodone was increased and Zoloft and Elavil were ordered (ECF No. 171-1, at p. 3). The electronic medication administration records reveal that Plaintiff regularly received his prescribed medications on a daily basis during the first two months of his confinement at ACJ. [ECF No. 171-3].

Thus, the record establishes that Plaintiff was under the continual care of ACJ's medical personnel since his arrival at ACJ. There is no indication in the record that any of the individual Allegheny Defendants knew, or had reason to know, that Plaintiff was not receiving proper medical care. Since Plaintiff was being treated by medical professionals, said Defendants were justified in believing that Plaintiff's medical needs were being met appropriately. As a result,

Plaintiff cannot show that Defendants Fitzgerald, Harper, and Wainwright possessed the scienter required to establish a cognizable deliberate indifference claim, and summary judgment will be entered in their favor accordingly.

### 2. Defendant Allegheny

In order to state a claim of municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978). A municipal policy is made when a decision-maker issues an official proclamation or decision. Pembaur v. City of Cincinnati, 475 U.S. 469, 481(1986); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. Id. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Finally, the plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. Bielevicz v. Dubinon, 915 F.2d 845, 850–51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. Id.

Upon consideration of the Allegheny Defendants' prior motion to dismiss, this Court construed Plaintiff's vague allegations broadly, finding that Plaintiff is alleging that Defendant Allegheny "employed a policy to deny prescribed medication to incoming prisoners, and a policy to cede 'full control over inmate health care' to its contractor, Corizon, which resulted in the denial of prescribed medication without recourse." (ECF No. 131, at p. 16). At that time, the

Court gave Plaintiff the benefit of the doubt and found Plaintiff's allegations minimally sufficient to overcome a motion to dismiss at the pleading stage. It was the Court's thought that Plaintiff should have the ability to further develop this claim through the discovery process. This he has apparently failed to do, however, as the record is devoid of any evidence establishing that Defendant Allegheny had a policy or custom that caused a constitutional violation. As a result, the entry of summary judgment in favor of Defendant Allegheny is warranted.

### C.  Defendant Corizon

Plaintiff alleges that Defendant Corizon "has a policy of denying medical treatment to incoming prisoners that had valid medical prescription, from a licensed medical doctor." (ECF No. 79, at p. 5). In particular, Plaintiff alleges that upon his transfer to ACJ he was informed by a nurse that he would not get his medication "for a week or so" because Corizon's doctor had to re-prescribe it. (Id. at p. 6). This claim is belied by the medical evidence of record.

Specifically, the medical intake form completed upon Plaintiff's admission to ACJ on May 30, 2014, indicates that Plaintiff had previously been prescribed Ventolin, Proventil, analgesic cream, Trazodone, Sertraline, Gabapentin, and Amitriptyline. [ECF No. 166-3]. ACJ's medication logs reveal that, on May 31, 2014, Plaintiff was administered Alvesco (in place of Ventolin and Proventil for asthma), Sertraline, and Amitriptyline, and the next day also began receiving Trazodone. (ECF No. 166-4, at p. 1). These medications were continually provided to Plaintiff over, at least, the next two months. [ECF No. 171-3]. In addition, over the same period of time, Plaintiff was seen and evaluated numerous times by doctors, nurses, and other medical staff. [ECF No. 171-1]. Thus, there is no evidence that Defendant Corizon consciously and deliberately ignored Plaintiff's medical conditions or inappropriately delayed or denied prescribed medical treatment. Instead, Plaintiff's allegations appear to be nothing more than

Plaintiff's disagreement with the medications that were provided to him. However, "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation." Monmouth County Corr. Inst. v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights"). Defendant Corizon is, therefore, entitled to the entry of summary judgment in its favor on this claim.

### D. Defendants Druskin, Litzinger, and Katcher

As noted earlier, Defendants Druskin, Litzinger, and Katcher have never been served in this case, no attorney has entered an appearance on their behalf, and they are not joined in any of the pending motions for summary judgment. Nonetheless, Section 1915A(b) of the Prison Litigation Reform Act ("PLRA") provides:

> (b) Grounds for dismissal - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A(b). Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997) ("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or *sua sponte*, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also includes statutory provisions with respect to actions brought by

prisoners who are proceeding *in forma pauperis*. See 28 U.S.C. §1915(e)(2).[3] Under these provisions as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating *sua sponte* dismissal of *in forma pauperis* actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e), and 42 U.S.C. § 1997e(c), the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

Here, it has already been determined that Plaintiff is unable to establish that Defendant Corizon consciously and deliberately ignored Plaintiff's medical conditions or inappropriately delayed or denied prescribed medical treatment. This finding applies equally to Defendants Druskin, Litzinger, and Katcher, who were members of Corizon's medical staff at all times relevant to this case. Thus, Plaintiff has failed to state a claim against any of said Defendants upon which relief may be granted, and they will be dismissed from this case, *sua sponte*, pursuant to the authority granted by the PLRA.

An appropriate Order follows.

---

[3] Title 28 U.S.C. §1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."